# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. THOMPSON, | 1:04-cv-06755-LJO-SMS-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION TO DISMISS BE GRANTED AND PLAINTIFF'S SURREPLY BE STRICKEN |
| v. | |
| F. REYNOSO, et al., | (Docs. 35 and 41) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations on Defendants' Motion to Dismiss**

**I.   Relevant Procedural History**

James L. Thompson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint initiating this action on December 27, 2004. (Doc. 1.) This action now proceeds on the first amended complaint filed on July 24, 2006, against defendants Sergeant ("Sgt.") F. Reynoso,[1] Correctional Officer ("C/O") R. Sloss, C/O K. Edmonds, C/O M. McVay, C/O Castillo, and C/O M. Martinez, on Plaintiff's claim for

---

[1] Sgt. F. Reynoso has not been served in this action; however, on May 14, 2009, the Court directed the United States Marshal to initiate service upon Sgt. F. Reynoso, which is currently pending. (Doc. 50.) Thus, at this stage of the proceedings, Sgt. F. Reynoso has not appeared in this action or joined the pending motion to dismiss.

1

excessive physical force in violation of the Eighth Amendment of the United States Constitution. (Doc. 16.)[2] The events allegedly occurred at Corcoran State Prison in Corcoran, California, while Plaintiff was incarcerated there.

On September 10, 2008, pursuant to Federal Rule of Civil Procedure 12(b), defendants Sloss, Edmonds, and McVay ("Defendants")[3] filed a motion to dismiss for failure to exhaust available administrative remedies. (Doc. 35.) On October 3, 2008, defendants Castillo and Martinez joined the motion to dismiss. (Doc. 39.) On September 29, 2008, Plaintiff filed an opposition, and on October 2, 2008, Defendants filed a reply to the opposition.[4] (Docs. 36, 38.)

On October 23, 2008, Plaintiff filed a surreply without leave of Court. (Doc. 41.) Defendants' motion to dismiss was deemed submitted pursuant to Local Rule 78-230(m) on October 2, 2008. Plaintiff does not have a right to file a surreply under the Local Rules or the Federal Rules of Civil Procedure, and Plaintiff did not obtain leave of Court to do so. Therefore, the Court shall recommend that Plaintiff's surreply be stricken from the record.

**II.     Plaintiff's Allegations in the Amended Complaint**

In the amended complaint, Plaintiff claims that defendants violated his Eighth Amendment rights when they used excessive physical force against him at Corcoran State Prison. Plaintiff's claims arise from an incident which allegedly occurred on November 10, 2003 when he was returned to his cell (prior whereabouts unstated) to discover personal belongings had been removed and the remaining contents of his cell had been ransacked. Plaintiff alleges as follows. Plaintiff attempted to gain staff attention and was heard, but not responded to. Plaintiff then obstructed a portion of the view into his cell so as to gain a response. Sgt. F. Reynoso came to Plaintiff's cell door and refused Plaintiff's request to speak to higher ranking staff. Plaintiff subsequently again obstructed the view into his cell. Reynoso returned

---

[2] In the motion to dismiss and subsequent joinder, counsel for Defendants appeared for defendant Castillo. (Docs. 35, 39.) It is unclear whether this defendant is C/O F. Castillo or C/O Costillo, both named as defendants by Plaintiff in the first amended complaint.

[3] "Defendants" also includes defendants Castillo and Martinez who joined the motion to dismiss on October 3, 2008.

[4] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on July 11, 2008. Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). (Doc. 26.)

2

and requested Plaintiff to "cuff up" for removal of Plaintiff's remaining property, which Plaintiff refused. Plaintiff requested, and was denied, an opportunity to speak with higher ranking staff. Reynoso became enraged and, over the next 25-45 minutes, repeatedly attacked Plaintiff with pepper spray. Reynoso requested those serving under him to join in rushing Plaintiff's cell. Reynoso then directed C/O Montanez to electronically open Plaintiff's cell. Montanez complied. Thereafter Reynoso, McVay, Martinez, Sloss, Edmonds, and Costillo rushed into Plaintiff's cell and punched him until he was pinned down. Once pinned down, Reynoso struck Plaintiff's head with a pepper spray MK-9 cannister – necessitating thirteen stitches. While handcuffed, all six defendants repeatedly hit and kicked Plaintiff. The six defendants became tired. McVay ended the encounter by kicking Plaintiff in the lower back and stating "[t]his is what we do to ass-holes." Captain Rodriguez signed off on the incident despite knowing that the use of force was excessive and not within CDCR guidelines. Plaintiff continued to receive treatment for his injuries from the incident through the date he filed his first amended complaint.

### III. Legal Standards

#### A. PLRA Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Booth v. Churner, 532 U.S. 731, 741 (2001). "Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford v. Ngo, 548 U.S. 81, 90 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal," Id. at 83-84.

#### B. CDCR's Grievance Process

The Court takes judicial notice of the fact that the California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints. Cal.Code Regs., tit. 15 § 3084.1 (2007). The process is initiated by submitting a CDC Form 602. Id. at §

3

3084.2(a). Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5. An interview is required at the first level of review, with few exceptions, and "[A]n appellant's refusal to be interviewed or cooperate with the reviewer shall result in cancellation of the appeal." Id. at §§3084.4(d), 3084.5(f). In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85; McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

### C. Unenumerated Rule 12(b) Motion to Dismiss

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. 199, 215-16 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

### IV. Defendant's Motion to Dismiss

#### A. Defendants' Statement of Facts

Defendants submit the following Statement of Facts[5]:

Plaintiff's claims arise from an incident which allegedly occurred on November 10, 2003. Plaintiff alleges he was returned to his cell to discover that his cell had been ransacked. Plaintiff

---

[5] Defendants submit these facts for purposes of this motion only. (D's Mtn., p. 3 n. 1.)

attempted to gain staff's attention by twice obstructing a portion of the view into his cell so as to gain a response. Defendant Reynoso requested Plaintiff to "cuff up and Plaintiff refused. Reynoso became enraged and repeatedly attacked Plaintiff with pepper spray. Reynoso then requested other correctional officers to join him in rushing Plaintiff's cell. Thereafter, defendants Reynoso, McVay, Martinez, Sloss, Edmonds, and Costillo rushed into Plaintiff's cell and beat and kicked him, causing serious injuries.

The Inmate Appeals Board received Plaintiff's appeal describing this incident on November 25, 2003, and assigned it log number CSPC-5-03-4329.[6] The informal level of review was bypassed. Lieutenant Rousseau attempted to interview Plaintiff about this appeal on December 30, 2003, but Plaintiff refused to be interviewed. Plaintiff admits in his appeal he was requested to exit his cell for an interview twice, and he refused both requests. Because Plaintiff refused to be interviewed, his appeal was canceled under California Code of Regulations, Title 15, Section 3084.4(d). Given the number of his appeals, Plaintiff's familiarity with appeal procedure can't be disputed.

**B.    Discussion**

Defendants concede that Plaintiff filed an appeal grieving the incident at issue in Plaintiff's complaint. (D's Mtn., p. 3:23-24.) However, Defendants submit evidence that Plaintiff's appeal was canceled at the first formal level of review, due to his refusal to participate in an interview, and then screened out at the second and third levels because of the first level cancellation. (Doc. 35, Grannis Dec., ¶4, Jones Dec., ¶7.) Defendants also submit evidence that Plaintiff admitted in his appeal that he was requested to exit his cell for an interview twice, and he refused both requests. (Jones Dec., Ex. F, p. 5.) Defendants also submit evidence that Plaintiff has filed numerous administrative appeals while at Corcoran State Prison, arguing that Plaintiff cannot claim to be unfamiliar with the appeals process. (Jones Dec., ¶¶5, 6.)

Plaintiff concedes that he is familiar with the appeals process and has been interviewed before, but disputes that he has ever refused an interview and asserts that he did not know what the interview was for. (Thompson Dec., ¶¶8, 11; P's opp'n, p. 5:24-27.) Plaintiff declares he was always willing to

---

[6] Defendants' Statement of Facts gives the log number as CSPC-5-03-0439, which appears to be a typographical error. (D's Mtn., Doc. 35, p. 3:24.) The correct log number, shown by all other evidence submitted, is CSPC-5-03-4329.

5

be interviewed and continued to pursue the grievance process in written form. (Thompson Dec., ¶13.) Plaintiff declares he did not exit his cell because there was no video camera being used in the cell extraction, because the officers did not disclose the nature of the interview, because Sgt. Reynoso, who had assaulted him and was party to the appeal, was present, and because Lt. Rousseau has a reputation for condoning assaults on prisoners. (Id., ¶2; P's opp'n, Ex. A, p. 7.)

Defendants challenge Plaintiff's credibility with evidence that Plaintiff submitted altered documents in his opposition: 1) Incident Report CRC-837, on which Plaintiff wrote "video interview of I/M Thompson" on the line labeled "Description of Injuries" (marked N/A) (Doc. 39, p. 9); 2) Plaintiff signed his name over the words "refused to sign" and filled in other blanks on the form "Allegations of Misconduct by a Peace Officer" (Id. at p. 13, Cf. with original, Jones Dec., Ex. F, p. 6.) (Doc. 35, Attch. 5, p. 16); and 3) Plaintiff's proof of service of his opposition was falsified (Douglas Dec. ¶2). Defendants also submit evidence that Plaintiff's statement that he "never refused an interview" is at odds with his description of the officers' attempts to cause him to exit his cell, in which he states, "it would be ridiculous to even imagine Appellant coming out to participate in an interview ..." (Doc. 36 at 8:21; Jones Dec., Ex. F, p. 5.) Defendants argue that the Court should be disinclined to believe that Plaintiff "never refused an interview," in light of his alteration of documents and inconsistent statements.

Plaintiff's argument that he did not understand the nature of the interview is unpersuasive. Plaintiff admits that he is familiar with the administrative appeals process, which includes interviews conducted by prison officials. (Thompson Dec., ¶¶8, 11.) Defendants provide evidence that by December 30, 2003, Plaintiff had filed ten appeals at CSP, seven of them during 2003. (Jones Dec., Ex. A.) In 2003 alone, Plaintiff participated in at least four appeals interviews, one of them conducted only nineteen days before Plaintiff refused the interview on December 30, 2003. (Id., Exs. B-G.) Also in 2003, Plaintiff refused to participate in three interviews, resulting in cancellation of three appeals.[7] Id. On December 30, 2003, when Sgt. Reynoso asked Plaintiff to exit the cell for the interview, Plaintiff had

---

[7] On August 7, 2003, Plaintiff refused an interview with Sgt. Reynoso for another of his appeals. Id.

at least two appeals pending and knew from experience that refusing an interview would cause cancellation of the appeal. Id. Plaintiff provides no evidence that he attempted to find out what the appeal was for by asking the officers. There is also no evidence that Plaintiff wrote on the appeal that he "did not refuse the interview and was willing to be interviewed," as Plaintiff claims. (P's opp'n, Doc. 36, p 5:13-14.) "[C]ourts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Woodford, 548 U.S. at 90 (quoting United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37). With this record, Plaintiff cannot credibly claim he did not understand he was being asked to participate in an appeals interview.

Plaintiff claims that he was afraid to exit his cell because Sgt. Reynoso, who had previously assaulted him and was a party to the appeal, was present outside his cell and told him in a sarcastic and threatening manner to exit the cell, and because Lt. Rousseau, known to condone assaults of prisoners, was also present. (P's opp'n, Doc. 36, Ex. A, pp. 7, 9.) Plaintiff also says he speculated Sgt. Reynoso was improperly going to be present at the interview. Although the Ninth Circuit has not yet decided the issue, Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008) (it is unclear if any exceptions to exhaustion apply), other Circuit Courts have addressed the issue and held that exhaustion occurs when prison officials prevent exhaustion from occurring through misconduct or fail to respond to a grievance within the policy time limits, e.g., Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."); Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007) (Courts are "obligated to ensure any defects in exhaustion were not procured from the action of inaction of prison officials."); Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, [] and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." (quoting Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006))); Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) (administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance); Abney v. McGinnis,

380 F.3d 663, 667 (2d Cir. 2004) (inability to utilize inmate appeals process due to prison officials' conduct or the failure of prison officials to timely advance appeal may justify failure to exhaust); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (the failure to respond to a grievance within the policy time limits renders remedy unavailable); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (when prison officials fail to respond, the remedy becomes unavailable, and exhaustion occurs); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (district court did not err when it declined to dismiss claim for failure to exhaust where prison failed to respond to grievance); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (when a valid grievance has been filed and the state's time for responding has expired, the remedies are deemed exhausted); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998) (when time limit for prison's response has expired, the remedies are exhausted); see also Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (recognizing that a remedy prison officials prevent a prisoner from utilizing is not an available remedy); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) (formal grievance procedure not available where prison officials told prisoner to wait for termination of investigation before filing formal grievance and then never informed prisoner of termination of investigation); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy prison officials prevent a prisoner from utilizing is not an available remedy). Plaintiff's claims – that Sgt. Reynoso used a threatening voice, had previously assaulted Plaintiff, was a party to the appeal, and might possibly attend the interview; and that Lt. Rousseau had a bad reputation, and that no video camera was used in the cell extraction –, without more, do not describe affirmative misconduct by the officers that would prevent Plaintiff from participating in the appeals interview. Under these circumstances, the Court finds no misconduct by these officers that prevented exhaustion from occurring.

"Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford, 548 U.S. at 90-91, and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal," Id. at 83. Pursuant to applicable regulations, the failure to cooperate or be interviewed constitutes abuse of the appeals system and results in cancellation of the appeal, subjecting it rejection upon screening. Cal.Code.Regs., tit. 15 §§ 3084.3(c)(8), 3084.4(d) (2007). By refusing to be interviewed, Plaintiff failed to comply with the

8

procedural rules. The appeal was not exhausted and it was not exhausted due to Plaintiff's failure to follow the applicable procedural rules, a failure which cannot be excused because Plaintiff was dissatisfied with the officers who asked him to exit his cell. Accordingly, Defendants are entitled to dismissal of this action in its entirety.

**V.      Conclusion and Recommendation**

For the reasons set forth herein, the Court HEREBY RECOMMENDS that

1. Plaintiff surreply, filed October 23, 2008, be STRICKEN from the record;
2. Defendants' motion to dismiss the complaint for failure to exhaust remedies be GRANTED;
3. This action be DISMISSED in its entirety, without prejudice; and
4. The Clerk be DIRECTED to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 2, 2009**                              /s/ Sandra M. Snyder
                                                       UNITED STATES MAGISTRATE JUDGE

9